IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| MARVIN D'ANGELO TAYLOR, | : | CASE NO. 18-56412-JRS |
| TERIA LEONNE TAYLOR, | : | |
| | : | |
| Debtors. | : | |
| | : | |
| | : | |
| FREEDOM MORTGAGE CORPORATION, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| MARVIN D'ANGELO TAYLOR, | : | |
| TERIA LEONNE TAYLOR, | : | |
| NANCY J. WHALEY, Trustee | : | |
| | : | |
| Respondents. | : | |
| | : | |

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Movant has filed documents with the court to obtain relief from the automatic stay.

**YOUR RIGHTS MAY BE AFFECTED.  You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant relief from the automatic stay or if you want the court to consider your views on the motion, then you or your attorney shall attend the hearing scheduled to be held on

March 2, 2021 _____ at __9:00 a.m.__ _____ at the **United States Bankruptcy Court, 75 Ted Turner Drive S.W., Courtroom 1404, Atlanta, Georgia 30303.**

***Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone ***

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.

You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Send your response so that it is received by the Clerk at least two business days before the hearing.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

The address of the Clerk's Office is: Clerk, 75 Ted Turner Drive S.W., Suite 1340, Atlanta, Georgia 30303.  You must also send a copy of your response to the undersigned at the address stated below.

Dated this:    2/5/2021

*/s/ Michael J. McCormick*

Michael J. McCormick, GA BAR NO. 485749
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-3918
Michael.McCormick@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| MARVIN D'ANGELO TAYLOR, | : | CASE NO. 18-56412-JRS |
| TERIA LEONNE TAYLOR, | : | |
| | : | |
| Debtors. | : | |
| | : | |
| FREEDOM MORTGAGE CORPORATION, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| MARVIN D'ANGELO TAYLOR, | : | |
| TERIA LEONNE TAYLOR, | : | |
| NANCY J. WHALEY, Trustee | : | |
| | : | |
| Respondents. | : | |
| | : | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtors claim an interest. Said real property is security for a promissory note, and is commonly known as 1066 Mason Lee Ave, Loganville, Georgia 30052 (the "Property").

3.

Debtors have defaulted in making payments which have come due since this case was filed.  As of January 7, 2021, Debtors are delinquent for nine (9) payments of $1,514.20 each (May 2020 – January 2021); less a suspense balance of $762.35, pursuant to the terms of the Loan Modification Agreement.  In addition, Movant has also incurred post-petition Bankruptcy fees of $900.00, as disclosed on the Notice of Post-petition Mortgage Fees, Expenses, and Charges filed September 19, 2018.

4.

As of January 7, 2021, the unpaid principal balance is $186,712.60, and interest is due thereon in accordance with the Loan Modification Agreement.  The estimated total payoff is $208,589.75.

5.

Because of Debtors' default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

6.

Because the Security Deed so provides, Movant is entitled to its attorney's fees.

7.

Movant requests it be permitted to contact the Debtors via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

IMPORTANT NOTICE: Freedom Mortgage Corporation ("Freedom") is firmly committed to helping its borrowers who are experiencing a hardship. Depending on the

circumstances of your case, Freedom may be amenable to consensual resolution of this matter, with Court approval. Potential options for resolution may include, among other things, temporary forbearance of payments, payment restructuring and/or adjustment of your payment amount. If you (or, if applicable, any co-debtors) have experienced a hardship, please contact us (or have your counsel contact us, if you are represented) promptly to discuss possible options

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtors via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/ Michael J. McCormick* Michael J. McCormick
/~ss~/, /~sbs~/ BAR NO. /~sbn~/
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
/~sp~/
/~sfx~/
/~se~/

BANKRUPTCY CASE NO. 18-56412-JRS

CHAPTER 13

CERTIFICATE OF SERVICE

I, Michael J. McCormick, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Marvin D'Angelo Taylor
4232 Indian Manor Drive
Stone Mountain, GA 30083

Teria Leonne Taylor
1066 Mason Lee Avenue
Loganville, GA 30052

Howard P. Slomka                              *(served via ECF notification)*
Slipakoff & Slomka, PC
Suite 391
6400 Powers Ferry Road NW
Atlanta, GA 30339

Nancy J. Whaley, Trustee                      *(served via ECF notification)*
Nancy J. Whaley, Standing Ch. 13 Trustee
303 Peachtree Center Avenue
Suite 120, Suntrust Garden Plaza
Atlanta, GA 30303

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:    2/5/2021         By:    */s/ Michael J. McCormick*
                (date)                  Michael J. McCormick Georgia BAR NO. 485749
                                        Attorney for Movant

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

15 JUN 11  PM 2:00

RICHARD ALEXANDER, CLERK

Return To:
ServiceLink
East Recording Department
400 Corporation Drive
Aliquippa, PA 15001

GEORGIA INTANGIBLE TAX PAID
574.50
RICHARD T ALEXANDER, JR.
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

Prepared By:
Ashley Routledge
907 Pleasant Valley Avenue, Suite 3
Mount Laurel, NJ 08054
856-526-2341

——————— [Space Above This Line For Recording Data] ———————

State of Georgia

FHA Case No.

# SECURITY DEED

MIN

THIS SECURITY DEED ("Security Instrument") is given on  May 23, 2015
The Grantor is Teria Taylor and Marvin Taylor, as joint tenants with rights of
survivorship.

, and whose address is

1066 MASON LEE AVE, LOGANVILLE, GA  30052-0000

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc., ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. Freedom Mortgage Corporation

("Lender") is organized and existing under the laws of  The State of New Jersey          , and
has an address of 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ  08054

FHA Georgia Security Deed with MERS - 4/96
**VMP**-4N(GA) (1302).00       Amended 2/01
Page 1 of 8          Initials: _M·T_
VMP Mortgage Solutions, Inc.          _TT_



Borrower owes Lender the principal sum of One Hundred Ninety One Thousand One Hundred
Ninety Two and 00/100                                   Dollars (U.S. $ 191,192.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
June 1, 2045          . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of
all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c)
the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this
purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors
and assigns), and the successors and assigns of MERS, with power of sale, the following described property located
in Gwinnett                                                                    County, Georgia:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: ▮▮▮▮▮▮
which has the address of 1066 Mason Lee Ave                              .                    [Street]
Loganville                                   [City], Georgia 30052         [Zip Code] ("Property Address");
    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter
erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the
interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as
nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    Borrower and Lender covenant and agree as follows:
    UNIFORM COVENANTS.
    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,



-4N(GA) (1302).00                          Page 2 of 8                              Initials: _M T_
                                                                                              TT

in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or



‐4N(GA) (1302).00                    Page 3 of 8                    Initials: _MT_
                                                                    _TT_

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:





Initials: _M T_

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

 

VMP®-4N(GA) (1302).00

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.



18. **Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

21. **Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ] Condominium Rider        [ ] Growing Equity Rider        [xx] Other [specify]
[xx] Planned Unit Development Rider   [ ] Graduated Payment Rider    Waiver of Borrower's Rights

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)        _____ (Seal)
Marvin Taylor                    -Borrower      Teria Taylor                     -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                        -Borrower

STATE OF GEORGIA,                              Gwinnett County ss:
    Signed, sealed and delivered in the presence of:

                                               _____ Nneka Carpenter
                                               Unofficial Witness

                                               _____
                                               Notary Public,                   Gwinnett County
                                               State of Georgia

Loan origination organization Freedom Mortgage Corporation
NMLS ID ▆▆▆▆
Loan originator Kristen Louise DeSena
NMLS ID ▆▆▆▆▆

VMP -4N(GA) (1302).00                          Page 6 of 8

GEORGIA -

GRANTOR: Teria Taylor and Marvin Taylor, as joint tenants with rights of survivorship.

LENDER: Freedom Mortgage Corporation

DATE OF SECURITY DEED: May 23, 2015

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

**READ AND AGREED BY GRANTOR:**

Signed, Sealed and delivered in the presence of:

_____ Nneka Carpenter     _____ (Seal)
                                             Marvin Taylor            -Grantor

_____ Nneka Carpenter     _____ (Seal)
                                             Teria Taylor             -Grantor

                                            _____ (Seal)
                                                                      -Grantor

_____ Notary Public       _____ (Seal)
                                                                      -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me          5-23-15

                                                                      on the date set forth above.

_____                       _____
        Notary Public                       MCDONNEL & ASSOCIATES      Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____                       _____
Marvin Taylor                               Teria Taylor

# PLANNED UNIT DEVELOPMENT RIDER

| FHA Case No. |
|---|
| ███████████ |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 23rd                    day of
May, 2015                              , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
Freedom Mortgage Corporation

("Lender") of the same date and covering the Property described in the Security Instrument
and located at:

1066 Mason Lee Ave
Loganville, GA 30052
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as
Woodmere HOA C/o Georgia Community

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common
   areas and facilities), acting as trustee for the homeowners, maintains, with a
   generally accepted insurance carrier, a "master" or "blanket" policy insuring the
   Property located in the PUD, including all improvements now existing or
   hereafter erected on the mortgaged premises, and such policy is satisfactory to
   Lender and provides insurance coverage in the amounts, for the periods, and
   against the hazards Lender requires, including fire and other hazards included
   within the term "extended coverage," and loss by flood, to the extent required
   by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this
   Security Instrument for the monthly payment to Lender of one-twelfth of the
   yearly premium installments for hazard insurance on the Property, and (ii)
   Borrower's obligation under Paragraph 4 of this Security Instrument to maintain
   hazard insurance coverage on the Property is deemed satisfied to the extent
   that the required coverage is provided by the Owners Association policy.
   Borrower shall give Lender prompt notice of any lapse in required hazard
   insurance coverage and of any loss occurring from a hazard. In the event of a
   distribution of hazard insurance proceeds in lieu of restoration or repair
   following a loss to the Property or to common areas and facilities of the PUD,
   any proceeds payable to Borrower are hereby assigned and shall be paid to
   Lender for application to the sums secured by this Security Instrument, with
   any excess paid to the entity legally entitled thereto.
B. Borrower promises to pay all dues and assessments imposed pursuant to the
   legal instruments creating and governing the PUD.
C. If Borrower does not pay PUD dues and assessments when due, then Lender
   may pay them. Any amounts disbursed by Lender under this paragraph C shall
   become additional debt of Borrower secured by the Security Instrument. Unless

FHA Multistate PUD Rider - 10/95
Wolters Kluwer Financial Services
VMP®-589U (0402).02
Page 1 of 2          Initials: _MT_
                               TT

Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Marvin Taylor            -Borrower        Teria Taylor             -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                 -Borrower

VMP®-589U (0402).02                 Page 2 of 2

BK 5 3 6 1 8   P 0 0 6 1 1

|  | Order No.: | |
|--|-----------|--|
|  | Loan No.: | ████ |

## Exhibit A

The following described property:

All that tract or parcel of land lying and being in Land Lot 221 of the 5th District, Gwinnett County, Georgia, being Lot 10, Block A, Woodmere Subdivision, as per plat recorded in Plat Book 96, Pages 220-221. Gwinnett County, Georgia records, which said plat is incorporated herein by this reference and made a part of this description, being improved property.

Assessor's Parcel No:   ████

MIN
MERS Telephone: (888) 679-6377

ORIGINAL

# Note

FHA Case No.

May 23, 2015
*[Date]*

COLUMBIA
*[City]*

SC
*[State]*

1066 Mason Lee Ave
Loganville, GA 30052
*[Property Address]*

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 191,192.00      (this amount is called "Principal"),
plus interest to the order of the Lender. The Lender is Freedom Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of    3.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st   day of each month beginning on July 1, 2015        . I will make
these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe
under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items
in the order described in the Security Instrument before Principal. If, on June 1, 2045        , I still owe amounts under this
Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 89486, Cleveland, OH  44101-9486
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $     899.06       .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

FHA Multistate Fixed Rate Note
Bankers System™ VMP®
Wolters Kluwer Financial Services

1/15
VMP1R (1411).00
Page 1 of 4

5.  **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.  **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.  **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Fixed Multistate Fixed Rate Note
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/15
VMP12 (1411).00
Page 2 of 4

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Grounds for Acceleration of Debt.

(a) **Default**. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval**. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver**. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary**. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured**. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA Multistate Fixed Rate Note
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

1/15
VMP1R (1411).00
Page 3 of 4

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Marvin Taylor                  -Borrower

_____ (Seal)
Teria Taylor                   -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

                                            *[Sign Original Only]*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Loan origination organization Freedom Mortgage Corporation
NMLS ID ▉▉▉▉
Loan originator Kristen Louise DeSena
NMLS ID ▉▉▉▉

Pay to the order of

without recourse this _____ day of _____ 20 ____

**Freedom Mortgage Corporation**

Stanley C. Middleman
President/Chief Executive Officer

Recording Requested By: Freedom Mortgage Corporation
When Recorded Return To: Sahanashree Urs, Freedom Mortgage Corporation, 10500 Kincaid Drive, Fishers, IN
46037

## CORPORATE ASSIGNMENT OF SECURITY DEED

Gwinnett, Georgia
**SELLER'S SERVICING #:** ███████ Taylor"

**MIN #:** ████████████  **SIS #:** ████████

Date of Assignment: April 25th, 2018
Assignor: Mortgage Electronic Registration Systems, Inc., solely as nominee for Freedom Mortgage Corporation, its
successors and assigns at P.O. Box 2026, Flint, MI 48501-2026
Assignee: Freedom Mortgage Corporation at 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ 08054

Executed By: Terla Taylor and Marvin Taylor, as joint tenants with rights of survivorship.  To: Mortgage Electronic
Registration Systems, Inc., solely as nominee for Freedom Mortgage Corporation, its successors and assigns
Dated: 05-23-2015 Recorded: 06-11-2015 in Book/Reel/Liber 53618 Page/Folio 0600 as Instrument No. ██████ In
the County of Gwinnett, State of Georgia.

Property Address: 1066 Mason Lee Ave, Loganville, GA  30052

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security
Deed having an original principal sum of $191,192.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to
the terms contained in said Security Deed.

Mortgage Electronic Registration Systems, Inc., solely as nominee for Freedom Mortgage Corporation, its successors
and assigns
On __4/27/2018__

By: __Leslie F. Booher__ , Assistant Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

__Derek Hamblin__

NOTARY WITNESS

STATE OF __IN__
COUNTY OF __Hamilton__

Subscribed and sworn to (or affirmed) before me on __4-27-18__ , by __Leslie F. Booher__ ,
Assistant Secretary, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

__Eryk Calvin__                    (This area for notarial seal)

ERYK CALVIN
Notary Public, State of Indiana
Hamilton County
Commission # 704187
My Commission Expires
August 17, 2025

*4/25/2018 2:33:58 PM   ███████████   GASTATE_MORT_ASSIGN_ASSN

BK55047 PG0532

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

17 APR 12 PM 2:00

RICHARD ALEXANDER, CLERK

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251
**This Instrument was Prepared By:**
RUTH RUHL, P.C.
Ruth Ruhl, Esquire
12700 Park Central Drive, Suite 850
Dallas, Texas 75251
and Co-Counsel, PC Law Associates, LLC
Kenneth N. Smolar, Esquire
200 Fleet Street, Suite 6100
Pittsburgh, Pennsylvania 15220
Georgia Bar ID: 111708

GEORGIA INTANGIBLE TAX PAID
$27.00

RICHARD T. ALEXANDER, JR.
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

_____[Space Above This Line For Recording Data]_____

Loan No.:▮
MERS No.:▮                                                    MERS Phone: 1-888-679-6377

FHA Case No.:▮

# LOAN MODIFICATION AGREEMENT

**(Providing for Fixed Interest Rate)**

This Loan Modification Agreement ("Agreement"), made this 6th day of March, 2017
between  Teria Taylor and Marvin Taylor, as joint tenants with rights of survivorship, whose address is 1066
Mason Lee Ave, Loganville, Georgia 30052                                                    ("Borrower")
and  Freedom Mortgage Corporation, whose address is 10500 Kincaid Dr, Suite 300, Fishers, Indiana 46037
("Lender"),
and Mortgage Electronic Registration Systems, Inc.                                        ("Mortgagee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated
May 23rd, 2015         , granted or assigned to Mortgage Electronic Registration Systems, Inc. as mortgagee of record
(solely as nominee for Lender and Lender's successors and assigns), P.O. Box 2026, Flint, Michigan 48501-2026
and recorded on June 11th, 2015         , in Mortgage Book 53618          , Page 00600         ,
Instrument No. N/A                  , Official Records of Gwinnett             County, Georgia         ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in said Security Instrument and defined therein as the "Property," located at
1066 Mason Lee Ave, Loganville, Georgia 30052

**Georgia State Code: 48-6-65:** Intangible recording tax is not required to be paid on any instrument that modifies
by extension, transfer, assignment, or renewal, or gives additional security for an existing note, when the intangible
recording tax has been paid on the original security instrument or the holder of the original instrument was exempt.

**The original principal balance was $191,192.00. The existing principal balance is $187,164.76. $8,667.30 will
be added to the existing principal balance resulting in a new unpaid principal balance of $195,832.06. The
portion of the Unpaid Principal Balance which is subject to mortgage registry tax is $8,667.30**

**Amount Prior to Modification: 187,164.76.**

Loan No.: ▊▊▊▊▊▊

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      As of  May 1st, 2017        , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 195,832.06        , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.      Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of  3.750      %, from April 1st, 2017        . Borrower promises to make monthly payments of principal and interest of U.S. $ 906.93        , beginning on the 1st      day of  May        , 2017      , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of  3.750      % will remain in effect until principal and interest are paid in full. If on  April 1st, 2047        , (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.      If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.      Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Loan No. ▓▓▓▓▓▓▓

5.	Borrower understands and agrees that:

(a)	All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)	All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)	Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)	All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)	Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)	Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

(g)	"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee/Beneficiary of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6.	If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.	Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been

**GEORGIA LOAN MODIFICATION AGREEMENT**	Page 3 of 7
(FNMA Modified Form 3179 1/01 (rev. 04/14))

BK55047 PG0539

Loan No. ▮▮▮▮▮▮▮

waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such
time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for
all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant
and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a
waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan
Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any
such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this paragraph.
Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at
the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum
amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current
data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable
law.
     The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or
entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan
Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender
shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying
the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make
such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds,
Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree
in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an
annual accounting of the Funds as required by RESPA.
     If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower
for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under
RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount
necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is
a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by
RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with
RESPA, but in no more than 12 monthly payments.
     Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower
any Funds held by Lender.

| | |
|---|---|
| 3·18·17 | *Teria Taylor* (Seal) |
| Date | Teria Taylor —Borrower |
| 3-18-17 | *Marvin Taylor* (Seal) |
| Date | Marvin Taylor —Borrower |
| | (Seal) |
| Date | —Borrower |
| | (Seal) |
| Date | —Borrower |

BK55047 PG0536

Loan No.: ▮▮▮▮▮

## BORROWER ACKNOWLEDGMENT

State of Georgia

County of Gwinnett          ss:

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

(Seal)

_____
Notary Public

Printed/Typed Name: Chase T. Cassara

My Commission Expires: July 21, 2017

Loan No.: ▓▓▓▓▓

_____ 3/22/17
-Date

Freedom Mortgage Corporation
_____
-Lender

By: _____

Printed/Typed Name: Jesse Bainter

Its: AVP

_____
-Witness

(Corporate Seal)

State of Indiana
County of Hamilton

## LENDER ACKNOWLEDGMENT

§
§
§

On this 22nd day of March 2017, before me,
Bayley R. Hall [name of notary], a Notary
Public in and for said state, personally appeared Jesse Bainter, AVP of
Freedom Mortgage Corporation
, Lender,
personally known to me to be the person who executed the within instrument on behalf of said entity, and
acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)

BAYLEY R. HALL
Notary Public-Indiana
Resident of Morgan County
My Commission Expires Jul. 21, 2024

_____
Notary Signature

BAYLEY R. HALL
Notary Public-Indiana
Resident of Morgan County
My Commission Expires Jul. 21, 2024

_____
Type or Print Name of Notary

Notary Public, State of Indiana

My Commission Expires: July 21, 2024

ACKNOWLEDGMENT (GEORGIA)                                    Page 6 of 7

Loan No.

_____ 3/24/17
-Date

Mortgage Electronic Registration Systems, Inc.
-Mortgagee

By: _____

Printed/Typed Name: Jesse Barter

Its: Assistant Secretary

_____
-Witness

(Corporate Seal)

## MORTGAGEE ACKNOWLEDGMENT

State of Indiana          §
                          §
County of Hamilton        §

On this 22nd day of March _____, 2017, before me,
_____, [name of notary], a Notary Public
in and for said state, personally appeared Jesse Bainter
, Assistant Secretary of Mortgage Electronic Registration Systems, Inc., Mortgagee, personally known to me to be
the person who executed the within instrument on behalf of said entity, and acknowledged to me that he/she/they
executed the same for the purpose therein stated.

(Seal)
BAYLEY R. HALL
Notary Public-Indiana
Resident of Morgan County
My Commission Expires Jul. 21, 2024

_____
Notary Signature
Bayley R Hall
Type or Print Name of Notary

Notary Public, State of Indiana

My Commission Expires: July 21, 2024

---

ACKNOWLEDGMENT (GEORGIA)                                                    Page 7 of 7

BK55047 PG0539

**Exhibit A**

**D. THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE STATE OF GEORGIA, COUNTY OF GWINNETT, AND DESCRIBED AS FOLLOWS:**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 221 OF THE 5TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 10, BLOCK A, WOODMERE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 96, PAGES 220-221, GWINNETT COUNTY, GEORGIA RECORDS, WHICH SAID PLAT IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS DESCRIPTION, BEING IMPROVED PROPERTY.

Loan No.: 

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

| | | | |
|---|---|---|---|
| Teria Taylor | -Borrower | Marvin Taylor | -Borrower |
| | -Borrower | | -Borrower |

Loan No.: 

# CORRECTION AGREEMENT

Borrower(s): Teria Taylor and Marvin Taylor          Property: 1066 Mason Lee Ave, Loganville, Georgia 30052

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is Teria Taylor and Marvin Taylor

"Lender" is Freedom Mortgage Corporation
                                                        , and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $195,832.06 , which modifies. the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree and covenant in order to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

## ACKNOWLEDGMENT OF RECEIPT

**I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.**

_____  3·18·17        _____  3-18-17
Teria Taylor            -Borrower (Date)        Marvin Taylor        -Borrower (Date)


_____                _____
                    -Borrower (Date)                        -Borrower (Date)

**CORRECTION AGREEMENT**                                **Page 2 of 2**

Loan No.: ▮▮▮▮▮▮

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:                                          BORROWER:

N/A Modification _____              _Teria Taylor_____ _3·18·17_
                                    (Date)       Teria Taylor                  (Date)

N/A Modification _____              _Marvin Taylor_____ _3-18.17_
                                    (Date)       Marvin Taylor                 (Date)

_____              _____
                         (Date)                               (Date)

_____              _____
                         (Date)                               (Date)

ATTORNEY SELECTION NOTICE -MULTISTATE                                    Page 1 of 1